**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JUAN ORTIZ, individually and on behalf
of those similarly situated,

Plaintiff,

    v.

KEYSTONE PREMIER SETTLEMENT
SERVICES, LLC, MICHELLE
MACFARLANE, and MICHELLE
ELLIS,

Defendants.

CIVIL ACTION NO. 3:23-CV-01509

(MEHALCHICK, J.)

<u>**MEMORANDUM**</u>

Presently before the Court are two motions to dismiss and strike class allegations brought by Defendants Keystone Premier Settlement Services, LLC ("Keystone) and Michelle Ellis ("Ellis") (collectively, "Keystone Defendants"), and Michelle MacFarlane ("MacFarlane") (collectively, "Defendants"). (Doc. 9; Doc. 30). On September 12, 2023, Plaintiff Juan Ortiz ("Ortiz") initiated this action by filing a complaint on behalf of himself and those similarly situated, asserting claims under Pennsylvania's Revised Uniform Law on Notarial Acts ("RULNA"), 57 Pa. Cons. Stat. § 301, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, as well as claims for unjust enrichment. (Doc. 1). For the following reasons, Defendants' motions to dismiss shall be **DENIED in part** and **GRANTED in part.** (Doc. 9; Doc. 30). Defendants' motions to strike class allegations shall be **DENIED**. (Doc. 9; Doc. 30).

I.  <u>BACKGROUND AND PROCEDURAL HISTORY</u>

The following background is taken from the Complaint. (Doc. 1). On or around October 2, 2022, Ortiz closed on a purchase of real estate in Tannersville, PA and completed

a Closing Disclosure Form. (Doc. 1, ¶ 17). A Closing Disclosure is a form created by the Frank-Dodd Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301, and required in real estate loans such as the one at bar. (Doc. 1, ¶ 18). In Ortiz's Closing Disclosure Form, which itemized costs associated with the mortgage, Ortiz was charged a $66 notary fee by MacFarlane, which Ortiz paid. (Doc. 1, ¶ 17). According to Ortiz, this charge was unlawful. (Doc. 1, ¶ 35).

Ortiz filed the instant Complaint, alleging the following Counts against Keystone, as well as against MacFarlane and Ellis in their individual capacities, for the overcharge of notary services: Count I – Violation of RULNA, 57 Pa. Cons. Stat. § 301; Count II – Unjust Enrichment; and Count III – Violation of UTPCPL, 73 Pa. Stat. Ann. § 201-1. (Doc. 1, ¶¶ 22-35; Doc. 1, ¶ 24). Ortiz brought this action on behalf of himself, and all others similarly situated pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. (Doc. 1, ¶ 39) Ortiz alleges that he justifiably relied on Defendants to abide by Pennsylvania law when providing notarial services and as a result of the overcharge, Defendants were unjustly enriched. (Doc. 1, ¶¶ 25-35, 56-77). As relief, Ortiz seeks an award of actual damages incurred by himself and class members, including an award to Ortiz for his time and effort in litigating this case with interest, treble damages in the sum of three times the amount of money overcharged, and reasonable costs and expenses, as well as punitive damages. (Doc. 1, ¶¶ 61, 68, 77).

On October 5, 2023, Keystone Defendants filed the instant motion to dismiss and motion to strike class action allegations. (Doc. 9). On November 6, 2023, Keystone Defendants filed a brief in support. (Doc. 19). Ortiz filed a brief in opposition on November 27, 2023. (Doc. 24). Keystone Defendants filed a reply brief on December 18, 2023. (Doc.

31). Also on December 18, 2023, MacFarlane filed a motion to dismiss and motion to strike class action allegations, and on January 2, 2024, she filed a brief in support, which made materially identical arguments to those in Keystone Defendants' brief in support. (Doc. 30; Doc. 39). Ortiz filed a brief in opposition to MacFarlane's motion to dismiss on January 16, 2024, which made materially identical arguments to those in its brief in opposition to Keystone Defendants' motion to dismiss. (Doc. 38). MacFarlane filed a reply brief on January 30, 2024. (Doc. 39). On February 16, 2024, Ortiz filed two identical notices of supplemental authority. (Doc. 40, Doc. 41). Keystone Defendants filed a second reply brief responding to the notice of supplemental authority on February 19, 2024, and Ellis filed a materially identical second reply brief responding to the notice of supplemental authority on March 7, 2024. (Doc. 42, Doc. 43). This Court heard oral argument on the motions to dismiss on Tuesday, July 16, 2024. Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition.

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well

as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

4

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

B.    MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The "purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Res. Corp.*, No. 07-2686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).

"Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a

party to the action." *Champ v. USAA Casualty Insurance Company*, 2020 WL 1694372, at *2 (E.D. Pa. 2020) (quoting *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019)) (quotation omitted). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.' " *Id.* (*Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019)) (same). Thus, motions to strike pursuant to Rule 12(f) are generally disfavored "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale*, 2008 WL 2758238, at *14 (quoting *River Rd. Devel. Corp. v. Carlson Corp.*, No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)); *Eddystone Fire*, 2019 WL 6038535 at *3 (same).

Further, "[w]hen faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Cestra v. Mylan, Inc.*, No. 14-825, 2015 WL 2455420, at *7 (W.D. Pa. May 22, 2015) (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009)).

## III.   DISCUSSION

Defendants aver that Count I should be dismissed because RULNA does not provide a private cause of action; Count II should be dismissed because Ortiz fails to allege Defendants retained a benefit sufficient to state a claim for unjust enrichment; and Count III should be dismissed because Ortiz fails to demonstrate justifiable reliance sufficient to state a claim under the UTPCPL. (Doc. 19, at 17-18, 22, 27-30; Doc. 35, at 27-30; Doc. 35, at 18, 22, 27-30).

A.   FAILURE TO STATE A CLAIM UNDER RULNA

RULNA replaced the now-repealed Notary Public Law, 57 Pa. Stat. Ann. § 147 et seq., which "[did] not provide for a private right of action." *Becker v. Chicago Title Ins. Co.*, No. CIV.A. 03-2292, 2004 WL 228672, at *10 (E.D. Pa. Feb. 4, 2004); (Doc. 19, at 17-18; Doc. 35, at 18). Because "there is no functional difference between the operation of the statutory sections cited in *Becker* [*v. Chicago Title Ins. Co.*] and the statutory sections that Plaintiff brings an action under," Defendants argue that the same conclusion should apply to RULNA. (Doc. 19, at 18); 2004 WL 228672, at *10. Defendants further contend that the statute fails the Third Circuit's implied right of action test because there is no legislative intent to create a cause of action apparent in RULNA. (Doc. 19, at 19-21; Doc. 35, at 19-21). Defendants also submit that enforcement is explicitly vested in the State Department because the statute provides an alternative remedy for RULNA violations through an administrative penalty enforced by the State Department. (Doc. 19, at 21; Doc. 35, at 21-22).

Plaintiff responds that *Becker* is inapplicable here, as RULNA, the statute at issue in the instant case, was passed 10 years after *Becker* was decided. (Doc. 24, at 15-16; Doc. 38, at 17); 2004 WL 228672, at *10. Plaintiff further argues that this Court should imply a private cause of action because RULNA was crafted for the benefit of persons harmed by RULNA violations, there is no evidence of a lack of legislative intent, and a federal district court in New Jersey implied a cause of action in New Jersey's similar statute. (Doc. 24, at 17-23; Doc. 38, at 18-25).

RULNA specifies which acts are authorized and prohibited by notarial officers. 57 Pa. Cons. Stat. § 304. The Act does not contain an explicit private cause of action, which has recently become an issue of first impression for district courts within the Third Circuit. *See* 57

Pa. Cons. Stat. § 301; *Smith v. Radian Settlement Servs., Inc.*, No. 4:23-CV-01652, 2024 WL 666178, at *1 (M.D. Pa. Feb. 16, 2024); *Seplow v. Closing Pro, Inc.*, No. CV 23-3628, 2024 WL 649260 (E.D. Pa. Feb. 15, 2024). When the language of a statute does not explicitly provide for a private cause of action, Pennsylvania utilizes a three-prong analysis as a framework to determine whether a statute implicitly creates one. *Est. of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999) (citing *Cort v. Ash,* 422 U.S. 66 (1975)). These factors are as follows:

> … (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

> *Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1189 (Pa. 2007) (citing *Witthoeft,* 733 A.2d at 626).

The second factor, legislative intent, has been recognized as the "central inquiry" to this determination and is disputed by the parties here. *Witthoeft,* 733 A.2d at 626. In reviewing legislative intent, Pennsylvania courts have looked to factors including "'the occasion and necessity for the statute,' 'the mischief to be remedied,' 'the object to be attained,' 'the former law, if any, including other statutes upon the same or similar subjects,' and 'the contemporaneous legislative history.'" *Smith*, 2024 WL 666178, at *2 (quoting 1 Pa. C.S. § 1921(c)). Pennsylvania courts also look to the General Assembly to discern "whether there is an implied right of action" absent clear statutory language. *Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967, 973 (Pa. Super. Ct. 2021).

In the instant matter, the legislative intent factor does not weigh in favor of implying a private cause of action. In support of his argument, Ortiz points to the language of § 323(c), which states that "[t]he authority of the department [of state] under this section does not

prevent a person from seeking and obtaining other criminal or civil remedies provided by law." 57 Pa. Cons. Stat. § 323(c). Ortiz further notes that in 2023, Idaho implied a private right of action in that state's version of RULNA. (Doc. 38, at 24). Ortiz emphasizes that RULNA is part of the revised uniform laws, which vary in limited ways from state to state, and therefore Idaho's RULNA statute is materially similar to Pennsylvania's RULNA statute. (Doc. 38, at 24). However, federal district courts in Pennsylvania have held as recently as February 2024 that RULNA's provision allowing for plaintiffs to seek other remedies provided by law "does not suffice to create a private cause of action," noting that it merely provides the Department of State's enforcement powers are not exclusive under RULNA. *Seplow*, 2024 WL 649260, at *2. In fact, this provision may "support[] a conclusion that private individuals seeking to enforce provisions of the statute must look to remedies provided by *other* laws, especially because all the specific remedies and powers it enumerates are explicitly reserved to the Department of State." *Seplow*, 2024 WL 649260, at *2 (citing 57 Pa. Cons. Stat. § 323(a)) ("The department may deny, refuse to renew, revoke, suspend, reprimand or impose a condition . . ."). Further, legislative history about the purpose or intent behind RULNA reveals little. *See Seplow*, 2024 WL 649260, at *3 ("[g]iven the statutory language, I cannot construe silence in the legislative history as indicating an intent on the part of the Pennsylvania legislature to create a private remedy through the statute."). The Court finds that RULNA's text implies that exclusive enforcement powers are the Department of State's.

In examining the first and third factors, the Court find further support for the conclusion that RULNA does not imply a private cause of action. The first factor, whether the statute targets a benefitted class including the plaintiff, weighs against implying a private cause of action because RULNA's text does not focus on the benefitted class. RULNA focuses

9

on the regulated entities, rather than the benefitted class. *Smith*, 2024 WL 666178, at *3 ("[w]hen determining whether a statute was enacted for the benefit of a class of people, courts consider whether there exists a 'foreseeable and identifiable class.' RULNA does no such thing. Instead, it focuses entirely on the regulated entities, and empowers only the Pennsylvania Department of State with the authority to enforce the statute") (internal citations omitted). Accordingly, this Court concludes that RULNA was not enacted for Ortiz's benefit.

The third factor, whether implying a cause of action would be consistent with the legislative scheme, also weighs against implying a private right of action. While no court in this Circuit has directly addressed this factor, the fact that the statute includes alternative remedies and reserves enforcement power for the Department of State suggests that it would be consistent with the legislative scheme for plaintiffs to rely on other causes of action and remedies for RULNA violations. *See Smith*, 2024 WL 666178, at *2 ("[f]urther, RULNA provides that it 'does not prevent a person from seeking and obtaining other criminal or civil remedies provided by law.' […This] clearly and unambiguously provides that the law should not be interpreted to foreclose alternative remedies just as the Smiths have done in this suit.").

For these reasons, the Court will follow other federal district courts in Pennsylvania, and decline find that a private right of action exists under RULNA. *See Seplow*, 2024 WL 649260; *Smith*, 2024 WL 666178. Accordingly, Defendants' motion to dismiss Count I is granted, and Count I is dismissed.

B.    FAILURE TO STATE A CLAIM FOR UNJUST ENRICHMENT

Defendants submit that Ortiz's unjust enrichment claim is deficient because he has failed to plead the requisite fraud. (Doc. 19, at 26; Doc. 35, at 26-27). Defendants contend

that Ortiz contractually agreed to pay $66. (Doc. 19, at 26; Doc. 35, at 26-27). Therefore, the voluntary payment doctrine, which bars recovery when a plaintiff, absent fraud or duress and with full knowledge of the facts, voluntarily pays money to another, precludes any claim for unjust enrichment. (Doc. 19, at 26; Doc. 35, at 26-27). Ortiz responds that the voluntary payment doctrine is an affirmative defense, and plaintiffs are not required to plead facts sufficient to overcome an affirmative defense at the motion to dismiss stage. (Doc. 24, at 27-28; Doc. 38, at 29-30). Ortiz additionally contends that the pleadings do not demonstrate that he paid the fee in a truly voluntary way with an "unadulterated understanding" of the facts. (Doc. 24, at 29; Doc. 38, at 31).

Unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff L. Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013). An unjust enrichment action is based in equity and is one "which sounds in quasi-contract or contract implied in law." *Seplow*, 2024 WL 649260, at *4 (quoting *Roethlein*, 81 A.3d at 825 n.8). Quasi-contracts and contracts implied in law "are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Seplow*, 2024 WL 649260, at *4 (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969)). "'The elements of unjust enrichment are benefits conferred on one party by the other party, appreciation of such benefits, and acceptance and retention of such benefits under such circumstances that it would be inequitable for that party to retain the benefit without payment of value.'" *McConaghy v. Bank of New York*, 192 A.3d 1171, 1175 (Pa. Super. Ct. 2018) (quoting *Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 917 (Pa. Super. Ct. 2017)).

Unjust enrichment claims can be pled either as an alternative to breach of contract or as a companion to an underlying tort claim. *Seplow*, 2024 WL 649260, at *4; *see also Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016). When unjust enrichment is pled as an alternative to breach of contract, recovery is unavailable if a written or express contract exists. *Whitaker*, 198 F. Supp. 3d at 492-3. When unjust enrichment is pled as a companion, not an alternative, to an underlying tort claim and is established through improper conduct, the existence of a written contract does not render recovery unavailable. *See Whitaker*, 198 F. Supp. 3d at 492-3 (stating that unjust enrichment claims fall into two categories and only the first category, quasi-contracts, precludes the doctrine when a written or express contract exists). Further, when unjust enrichment is pled as a tort companion, it can be established through improper conduct involved in an underlying claim, such as fraud. *Seplow*, 2024 WL 649260, at *4; *see also Whitaker*, 198 F. Supp. 3d at 492 (defining unjust enrichment as "a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim."). In such cases, unjust enrichment need not be pled as an alternative to breach of contract. *Whitaker*, 198 F. Supp. 3d at 492-3. Unjust enrichment claims may arise when a party's obligations are created by "reasons of justice," rather than express terms. *Schott*, 259 A.2d at 449. Relevant here, notaries, as public officials who "owe a duty to the public to discharge his or her functions with diligence" may be held liable under equitable theories of liability "for reasons of justice." *Seplow*, 2024 WL 649260, at *4 (citing *Villanueva v. Brown*, 103 F.3d 1128, 1137 (3d Cir. 1997)).

The affirmative defense of the voluntary payment doctrine precludes any claim for unjust enrichment when a plaintiff, absent fraud or duress and with full knowledge of the

facts, voluntarily pays money to another. *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 159 (3d Cir. 2015) ("voluntary payment doctrine[. . .] prevents the recovery of payments made in the absence of fraud, duress, or similar compulsion") (citing *Matter of New Jersey State Bd. of Dentistry*, 423 A.2d 640, 643 (N.J. 1980)). "Consistent with this rationale, '[t]he voluntary payment defense ... is inapplicable when money is paid by a person without full knowledge of the facts.'" *Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749, 755 (3d Cir. 2009) (quoting *Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 937 A.2d 503, 514 (Pa. Super. Ct. 2007) (internal quotation omitted).

Two Pennsylvania courts in the Third Circuit have addressed whether unjust enrichment can arise from an unlawful overcharge of which only one party was aware, each coming to opposite conclusions. *Compare Seplow*, 2024 WL 649260 *with Smith*, 2024 WL 666178.[1] A notary company can retain an unjust benefit when it unlawfully overcharges for services and the other party is not aware. *See Seplow*, 2024 WL 649260, at *4 ("the purportedly 'agreed upon price' incorporated an unlawful overcharge, of which one party – a party exercising authority conferred by statute – was aware, and the other was not."); *see also Jarzyna v. Home Properties, L.P.*, No. CV 10-04191, 2013 WL 12155357, at *1 n.3 (E.D. Pa. Dec. 13, 2013) (noting that a conferral of an actual benefit would be assumed if a landlord unlawfully charges extra fees and actually retains them). Further, when a plaintiff "had no awareness of the unlawful nature of the notary services charge, [] unless discovery reveals facts to the contrary, a voluntary payment defense lacks merit." *Seplow*, 2024 WL 649260, at *4; *see Lawn*

---

[1] In *Smith*, the court followed the *Tripicchio* court and dismissed an unjust enrichment claim in similar circumstances because plaintiffs "voluntarily" paid the overcharge. 2024 WL 666178, at *3. The *Smith* court reasoned that the plaintiffs in that case assumed that the overcharged fee was in accordance with law, and "[m]oney paid voluntarily, although under a mistake or ignorance of the law cannot be recovered." 2024 WL 666178, at *3.

*v. Enhanced Serv. Billing, Inc.*, No. 10-CV-1196, 2010 WL 2773377, at *2 (E.D. Pa. July 13, 2010) ("[t]he Voluntary Payment Rule does not preclude any of Plaintiff's claims in this case. Plaintiff's Complaint alleges that payments were made to Defendants because unauthorized and misleading charges were placed on Plaintiff's telephone bill. ***At this stage of the proceedings***, the depth of Plaintiff's knowledge regarding the Verizon bill is unclear.") (emphasis added). Affirmative defenses like the voluntary payment defense are not typically considered at the motion to dismiss stage. *See McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 354 (W.D. Pa. 2021) ("'The voluntary payment doctrine is not properly considered at the motion to dismiss stage when the factual record is insufficient to determine its viability.'") (quoting *Gallo v. PHH Mortg. Corp.*, 916 F.Supp.2d 537, 553 (D. N.J. 2012)).

In this case, Defendants are a notary, an officer of a company whose purpose is to provide notary services, and the company providing such services. (Doc. 1, ¶¶ 3-5). As such, each has a duty to comply with the law and to serve the public "with diligence." *See Villanueva*, 103 F.3d at 1137 ("'[a] notary is a public officer and owes a duty to the public to discharge his or her functions with diligence."). Plaintiff's complaint alleges that Defendants have charged more than the law permitted for services conferred.  (Doc. 1, ¶ 35). It is therefore plausible that they received a benefit it would be inequitable for them to retain. However, the benefit allegedly retained by each defendant must be analyzed individually. *CPC Properties, Inc. v. Dominic, Inc.*, No. CIV.A. 12-4405, 2013 WL 4457338, at *6 (E.D. Pa. Aug. 21, 2013) ("[a]n unjust enrichment claim demands an individualized inquiry").

Recovery based on an "indirect" benefit is possible and plaintiffs need not plead direct interactions or communications with each defendant. *Global Ground Support, LLC, v. Glazer Enter., Inc.,* 581 F.Supp.2d 669, 676 (E.D. Pa. 2008) ("[p]laintiffs need not have directly dealt

with each defendant in order to allege a claim of unjust enrichment against them."). However, "the benefit to the defendant must be more than remote to support an unjust enrichment claim." *Century Indem. Co. v. URS Corp.*, No. CIV.A. 08-5006, 2009 WL 2446990, at *6 (E.D. Pa. Aug. 7, 2009) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 447 (3d Cir. 2000)). When the benefit conferred on a defendant is "incidental," a plaintiff cannot recover from that defendant. *See, e.g., Allegheny Gen. Hosp.,* 228 F.3d at 447 ("incidental benefit to the Tobacco Companies is not enough to maintain an action; the nonpaying patients got the main benefit, not the Tobacco Companies").

### 1.  Keystone

Keystone argues that Plaintiff fails to state an unjust enrichment claim because the claim is based upon a contract for notary services, each party received the expected benefit, and Plaintiff voluntarily paid for services. In resisting the conclusion that it retained a benefit it would be inequitable to retain, Keystone relies heavily on the voluntary payment doctrine and *Tripicchio v. UPS Store, Inc.,* which held that defendants providing notarial services in New Jersey could not be liable under the theory of unjust enrichment for an unlawful overcharge. (Doc. 19, at 23-24; Doc. 35, at 23-25); 2023 WL 3182915, at *9. Plaintiff responds that Keystone did retain an inequitable benefit because "the amount [Keystone retained in money for services] was in excess of what Keystone lawfully applied toward notarial acts." (Doc. 24, at 12).

In his complaint, Plaintiff alleges that Keystone misrepresented unlawful fees when it overcharged for notary services because Keystone instituted a policy to charge unlawful fees and reasonable consumers would not know those fees were unlawful. (Doc. 1, ¶¶ 21, 25, 27). Taking the facts as alleged, Keystone therefore accepted and appreciated additional monetary

payments in excess of what it was entitled to by law. *See Seplow*, 2024 WL 649260, at *4. At oral argument, Plaintiff discussed the business and monetary benefits that a company can enjoy when it overcharges and obtains a profit that is greater than what it is entitled to. Therefore, this Court finds that Plaintiff sufficiently alleges that Keystone retained an actual benefit. *Cf. Jarzyna*, 2013 WL 12155357, at *1 n.3. Similarly, the voluntary payment defense is unavailing for Keystone. The voluntary payment defense is not ordinarily available at the motion to dismiss stage, unless it is clear on the face of the Complaint that Plaintiff made this payment with "full knowledge." *See McLean*, 542 F. Supp. 3d at 354; *Lawn*, 2010 WL 2773377, at *2. Here, Plaintiff alleges that he assumed that Keystone, as a company with a duty to provide a public service with diligence, was charging bona fide amounts. *See, e.g., Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661 (Pa. 2009) (voluntary payment defense unavailable related to misrepresentation in invoice); *see also Villanueva*, 103 F.3d at 1137. Accordingly, Defendants' motion to dismiss Count II as asserted against Keystone is denied.

### 2.    Ellis and MacFarlane

In addition to the same arguments made by Keystone, discussed *supra,* Ellis and MacFarlane submit that Plaintiff fails to state an unjust enrichment claim against them as individuals because Plaintiff does not allege any benefits conferred on Ellis or MacFarlane. (Doc. 19, at 25; Doc. 35, at 25-26). Plaintiff alleges that he paid money to Keystone, not directly to Ellis or MacFarlane. (Doc. 1, ¶¶ 17, 31-32, 35, 37). Plaintiff has not alleged any specific benefit Ellis or MacFarlane retained based upon the overcharges. During oral argument, Plaintiff speculatively argued that as employees of Keystone, Ellis and MacFarlane benefit from the inflated profits based on the illegal overcharges. Plaintiff fails to allege that

Keystone paid its employees, including Ellis or MacFarlane, more based upon its policy of overcharging. As alleged, the main benefit went to Keystone as a company, not to its employees. *See, e.g., Allegheny Gen. Hosp.,* 228 F.3d at 447 (barring unjust enrichment recovery from a party who was not the primary beneficiary and who only benefitted incidentally). Therefore, Plaintiff's unjust enrichment claims against Ellis and MacFarlane fail. Accordingly, Defendants' motion to dismiss Count II as asserted against Ellis and MacFarlane is granted and Count II as asserted against Ellis and MacFarlane is dismissed.

### C. FAILURE TO STATE A CLAIM UNDER THE UTPCPL

The parties dispute whether Ortiz sufficiently alleged fraudulent conduct to state a claim pursuant to the UTPCPL. (Doc. 19, at 27-30; Doc. 24, at 29-35; Doc. 35, at 27-30; Doc. 38, at 31-38). Specifically, Defendants aver that Ortiz "fails to make the requisite factual allegations to support his UTPCPL claim." (Doc. 19, at 30; Doc. 35, at 30). Defendants also argue that the UTPCPL "does not provide a cause of action merely for overcharging." (Doc. 31, at 18; Doc. 39, at 13, 19). Ortiz responds that he sufficiently alleged justifiable reliance by alleging that Defendants' overcharge was likely to cause confusion or misunderstanding. (Doc. 24, at 33-34; Doc. 38, at 35-37).[2]

---

[2] Ortiz also provides a lengthy list of citations to cases where courts have found justifiable reliance in analogous circumstances. (Doc. 24, at 33-34; Doc. 38, at 35-37). Ortiz notes that in situations like the ones at bar, courts in the Third Circuit found justifiable reliance sufficient to state a UTPCPL claim. *See Butakis v. NVR, Inc.*, 668 F. Supp. 3d 349, 357 (E.D. Pa. 2023) (plaintiffs pled justifiable reliance when defendants "failed to disclose to them that the Special Assessment carried interest and other charges, which they further relied upon when deciding to buy homes."); *McMahon v. Chipotle Mexican Grill, Inc.*, No. 2:20-CV-1448, 2023 WL 2760365, at *8 (W.D. Pa. Apr. 3, 2023) (customers "inherently rely on prices represented by Chipotle as being accurate"); *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (plaintiffs pled justifiable reliance by alleging that defendants did not disclose damaging side effects); *Coleman v. Commonwealth Land Title Ins. Co.*, 684 F.Supp.2d 595, 619 (E.D. Pa. 2010) ("[p]laintiffs allege sufficient facts of justifiable reliance at this stage by pleading that no [p]laintiff would have knowingly paid a

The UTPCPL acts as Pennsylvania's Consumer Protection Law, seeking to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (quoting 73 Pa. Stat. Ann. § 201–3). The catch-all provision of UTPCPL prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Bennett*, 40 A.3d at 154 (quoting 73 Pa. Stat. Ann. § 201–2(4)(xxi)). This catch-all provision "is meant to encompass a broad range of deceptive behavior on which a consumer relies to his detriment," including charging more than the statutorily allowable maximum price. *Seplow*, 2024 WL 649260, at *6. "The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices such as fraud." *Bennett*, 40 A.3d at 151 (citing *Agliori v. Metropolitan Life Ins. Co.,* 879 A.2d 315, 318 (Pa. Super. Ct. 2005)). To effectuate this purpose, Pennsylvania's Supreme Court has held that the UTPCPL is to be "liberally construed." *Com., by Creamer v. Monumental Properties, Inc.*, 329 A.2d 812, 816 (Pa. 1974) (citing *Verona v. Schenley Farms Co.*, 167 A. 317, 320 (Pa. 1933)). As a result, courts recognize a lower pleading standard for UTPCPL claims as opposed to claims of common law fraud. *See Seplow,* 2024 WL 649260, at *5; *See Bennett*, 40 A.3d at 154.

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Seplow,* 2024 WL 649260, at *5 (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)); *accord Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008)). As such, "a plaintiff alleging violations of the Consumer Protection

_____

premium for title insurance that was higher than the premium that was actually due and owing.").

18

Law must prove justifiable reliance." *Hunt,* 538 F.3d at 224. "For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently." *Seplow,* 2024 WL 649260, at *5.

Under Pennsylvania law, plaintiffs do not "enjoy[] a presumption of reliance," as this must be proven affirmatively. *Hunt*, 538 F.3d at 227. However, Pennsylvania courts have "recognized one exception to the requirement to prove justifiable reliance, where there is a fiduciary relationship." *Seplow,* 2024 WL 649260, at *6; *See Debbs v. Chrysler Corp.*, 810 A.2d 137, 157 (Pa. Super. Ct. 2002). Importantly, courts have considered justifiable reliance a question for a fact-finder. *Johnson v. MetLife Bank*, N.A., 883 F. Supp. 2d 542, 548-49 (E.D. Pa. 2012) (noting that justifiable reliance is a question of fact, depending on the parties' circumstances and relationship). For UTPCPL claims with multiple defendants, a plaintiff must make specific allegations of justifiable reliance for each defendant. *Loften v. Diolosa*, No. CIV. A. 3:CV-05-1193, 2008 WL 2994823, at *8 (M.D. Pa. July 31, 2008) ("specifics must be plead as to each [d]efendant in order to accomplish the purpose of providing defendants with notice of particular unfair or deceptive acts asserted against them and reasonable opportunity to answer.") (internal quotation and citation omitted). Therefore, this Court will analyze the allegations against Keystone and individual defendants, Ellis and MacFarlane, separately to determine if Ortiz has met his pleading burden.

### 1.     Keystone

Keystone argues that Ortiz fails to state a claim for a UTPCPL violation because Ortiz has not alleged facts that he justifiably relied on Keystone such that "he was spurred to act by alleged fraudulent conduct." (Doc. 19, at 30). Ortiz responds that he has pled that he justifiably relied on Keystone's improper conduct of setting a policy of overcharging for notary

services by alleging a "reasonable consumer inherently expects fees for settlement services listed in a Closing Disclosure to be bona fide and proper in amount" and thus "assume[s Keystone's] $66 notary fee [is] bona fide and proper." (Doc. 1, ¶¶ 27, 29). Ortiz alleges that Keystone's conduct in setting a policy charging $66 "created a likelihood of confusion or misrepresentation, [Ortiz] justifiably relied on Defendant's [sic] wrongful conduct or misrepresentation, and [] he suffered harm and ascertainable loss as a result of that reliance." (Doc. 24, at 34; Doc. 38, at 35-36).

These allegations are sufficient for Ortiz to meet his burden at this stage of the litigation as to his claims against Keystone. *See Coleman*, 684 F.Supp.2d at 619 (finding justifiable reliance sufficiently pled under the UTPCPL when a plaintiff was charged more than she owed since no reasonable person would knowingly pay more for insurance than was owed); *see also Cohen v. Chicago Title Ins. Co.*, No. CIV.A.06-873, 2006 WL 1582320, at *3 (E.D. Pa. June 5, 2006) (denying a motion to dismiss UTPCPL claims based on title insurance overcharges above the statutory maximum rate); *Cf. Salvati v. Deutsche Bank Nat. Tr. Co.*, 575 F. App'x 49, 56 (3d Cir. 2014) (dismissing UTPCPL claims because a plaintiff admitted to not having actually paid the unlawful charges imposed by defendants and thus suffered no loss). Accordingly, Keystone Defendants' motion to dismiss the UTPCPL claim against Keystone is denied.

### 2. Ellis

Ellis argues that Ortiz has failed to state a claim for UTPCPL violations against her because Ortiz did not "purchase" anything from Ellis, does not make any factual allegations against her specifically, and Ellis and Ortiz did not have any communication or interaction with one another. Ortiz responds that under the "participation theory" Ellis can be held liable

for tortious conduct in which she participated, even without direct interactions with Ortiz. (Doc. 24, at 36). Ortiz further contends that he alleged in his Complaint that "Ellis as an officer of Defendant Keystone, Inc., actively participated in the alleged misconduct, practice, and policy of charging inflated notary fees." (Doc. 24, at 36; Doc. 1, ¶¶ 24, 60, 68, 74). Ellis responds in Keystone Defendants' reply brief that participation theory does not apply in contracts, and as such, is not applicable to any claim here. (Doc. 31, at 11).

In Pennsylvania, under the participation theory, plaintiffs can hold corporate officers liable in their individual capacity "where the record establishes the individual's participation" in a wrongful act. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)). The individual must be an actor who is an "actual participant" in the corporation's alleged conduct but need not be an owner of the corporation. *See Donsco, Inc.*, 587 F.2d at 606 ("[t]he only crucial predicate to Pinsker's liability is his participation in the wrongful acts."). Participation theory can open individuals to liability even in the contract context. *Loeffler v. McShane*, 539 A.2d 876, 879 (Pa. Super. Ct. 1988) ("[i]n a tort action, even if the plaintiff has entered into a contractual relationship with the corporation, the corporate officer is not insulated from liability…This is because the basis for tort liability is not the breach of contract with the corporation but rather the breach of an independent legal obligation to avoid injury to the plaintiff."). In such contexts, corporate officers can be held liable for misfeasance, but not nonfeasance. *Wicks*, 470 A.2d at 90. Participation in setting prices at illegal rates has been considered participation in a wrongful act. See *Knuth v. Erie-Crawford Dairy Cooperative Ass'n.,* 463 F.2d 470, 481 (3d Cir. 1972), *cert. denied,* 410 U.S. 913 (1973) ("Our best judgment is that the Courts of Pennsylvania would hold that directors of a sales agent corporation with authority from its principals to sell only

at legal prices who knowingly authorize sales at less than those prices have participated in conversions and are personally liable."). Courts have noted that when evidence discloses that an actor did not know that sales took place at illegal prices, such actors should not be liable. *Knuth*, 463 F.2d at 481.

Ortiz alleges no specific conduct against Ellis in personally charging fees for notary services, but asserts that she participated in such conduct by nature of her role in the company. (Doc. 1, ¶¶ 24, 60, 68, 74). At this stage in the litigation, Ellis's knowledge and participation in the tortious conduct is not clear. When considering a motion to dismiss, this Court must take Ortiz's allegations that Ellis participated in illegally setting notary prices as true. (Doc. 1, ¶¶ 24, 60, 68, 74). Therefore, his allegations against Ellis, while vague, survive at this juncture. *See Rosenberg v. Nassau Life & Annuity Co.,* No. CV 21-2673-KSM, 2022 WL 2718607, at *15 (E.D. Pa. July 13, 2022) (denying a motion to dismiss UTPCPL tort claims when "[t]he lack of specificity in this case seems related not to the fraud allegations themselves but rather to the division of responsibility and corporate structure of [d]efendants, which is presumably within [d]efendants' knowledge."); *but see Loften*, 2008 WL 2994823, at *8 ("allegations that Fremont violated the UTPCPL are inconsistent with other sections of the [a]mended [c]omplaint, which aver that [p]laintiff had no contact with Fremont whatsoever."); *Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) (dismissing UTPCPL claims against individual defendants when "plaintiff does not distinguish among these defendants in setting forth the alleged violations"). Accordingly, Keystone Defendants' motion to dismiss the UTPCPL claim against Ellis is denied.

### 3.    MacFarlane

MacFarlane argues that Ortiz has failed to state a claim for UTPCPL violations against her for the same reasons Keystone provides, *supra*. (Doc. 35, at 27-30). Ortiz responds with identical arguments to those he makes in response to Keystone, *supra*. (Doc. 38, at 32). Ortiz additionally argues that MacFarlane, as a notary public and former employee at Keystone, provided notary services at the closing of his home and "personally participated" in the conduct of "implicitly represent[ing] that the [overcharged] fee for notarial services was the amount lawfully due and owing." (Doc. 1, ¶¶ 4, 17; Doc. 39, at 32). While MacFarlane resists this conclusion in her reply brief, arguing that she did not participate in Keystone's tortious conduct, the allegations in the Complaint plainly state that MacFarlane personally executed the transaction with Ortiz. (Doc. 1, ¶¶ 4, 17; Doc. 39, at 11-12). Therefore, Ortiz has sufficiently pled that MacFarlane personally participated in the alleged tortious conduct. For the same reasons that Ortiz states a valid UTPCPL claim against Keystone, and because Ortiz sufficiently alleges that MacFarlane personally and actively participated in charging the $66 fee and representing that charge as lawful, he states a valid UTPCPL claim against MacFarlane. Accordingly, MacFarlane's motion to dismiss the UTPCPL claim is denied.

### D.    CLASS ALLEGATIONS

Finally, Defendants submit that this Court should strike all class allegations, as these claims are not viable class claims. (Doc. 19, at 31-47; Doc. 35, at 30-46). Ortiz asserts that the motion to dismiss stage is premature to decide issues of class certification since discovery has not yet occurred at this stage. (Doc. 24, at 37). There is little disputing this point. Whether plaintiffs meet the requirements of Rule 23 is typically decided on a motion for class certification, not on a motion to dismiss or strike. "[C]ourts within the Third Circuit have. . .

[found] a motion to strike class allegations premature where a motion for class certification has not been made and denied." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680 (E.D. Pa. 2011). "[I]n general, a court should wait to resolve a motion to strike class allegations until someone moves for class certification*." P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011); *see also Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 336 (E.D. Pa. 2023). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Luciano v. Tchrs. Ins. & Annuity Ass'n of Am - Coll. Ret. Equities Fund*, No. CV156726ZNQDEA, 2022 WL 1044969, at *3 (D. N.J. Apr. 7, 2022) (internal quotation marks omitted); *see also Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2022 WL 16540675, at *2 (M.D. Pa. Oct. 28, 2022). Because there appear to be questions of fact and law to be resolved, the Court denies Defendants' motions to strike. *See Seplow*, 2024 WL 649260 (finding the motion to dismiss stage is a premature time to strike class allegations pursuant to both unjust enrichment and the UTPCPL when discovery could reveal the viability of class claims).

E.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Ortiz's unjust enrichment claims against Ellis and MacFarlane are dismissed without

prejudice. Beyond legal conclusions, Ortiz has not sufficiently alleged facts that Ellis or MacFarlane actually retained a benefit from the overcharge. Therefore, the Court will grant Ortiz leave to file an amended complaint in an attempt to cure the deficiencies outlined herein in regard to these claims. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Austin Powder Co. v. No. 1 Contracting Corp.*, No. 3:07-CV-730, 2011 WL 1120418, at *4 (M.D. Pa. Mar. 24, 2011) (granting leave to amend when plaintiff failed to adequately plead a benefit conferred on one defendant).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Count I are **GRANTED**. (Doc. 9; Doc. 30). Count I is **DISMISSED with prejudice**.[3] The motions to dismiss Count II as asserted against Ellis and MacFarlane are **GRANTED**, and Count II as asserted against Ellis and MacFarlane is **DISMISSED without prejudice**. The motions to dismiss Count II as asserted against Keystone are **DENIED**. The motions to dismiss Count III are **DENIED**. The motions to strike are **DENIED**. Ortiz shall have 14 days to file an amended complaint setting forth allegations in support of this civil action against Defendants and curing the deficiencies outlined herein.

An appropriate Order follows.

BY THE COURT:

Dated: July 23, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[3] Amendment is futile when a statute creates no private right of action. *Redmond v. Fresh Grocers Store*, 402 F. App'x 685, 686 (3d Cir. 2010).